IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN J. SMITH, et al.,          :

    Plaintiffs,                   :

v.                                :    Civil Action No. GLR-16-487

OCWEN LOAN SERVICING, LLC,        :

    Defendant.                    :

## MEMORANDUM OPINION

THIS MATTER arises out of Plaintiffs Steven and Malisa Smith's unsuccessful attempt to modify their mortgage refinance through Defendant Ocwen Loan Servicing, LLC ("Ocwen"), the loan's servicer. The Smiths allege Ocwen violated federal and state law when it failed to comply with mandatory procedures and made misrepresentations regarding the Smiths' application for a loan modification. Currently pending before the Court is Ocwen's Motion to Dismiss (ECF No. 11). The Motion is fully briefed and ripe for disposition. No hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant the Motion.

### I.    BACKGROUND

#### A.    Factual Background

#### 1.    Loan Modification Attempts

On March 30, 2007, the Smiths borrowed $329,000 from American Home Mortgage as part of a refinance transaction (the

"Loan").   (Compl. ¶ 60, ECF No. 2).   The Smiths' promissory note was secured by a deed of trust on the residential property located at 929 Creek Park Road, Bel Air, Maryland (the "Property").   (Id. ¶ 59, 60).   At some unspecified time, Ocwen became the Loan's servicer.   (See id. ¶ 10).

The Smiths assert that they applied to modify their loan sometime after April 24, 2014, yet they do not specify the exact date on which they submitted their application to Ocwen.   (Id. ¶ 62).   Regardless, on May 28, 2014, Ocwen acknowledged receipt of the Smiths' application and indicated that it ordered a valuation report to assess the Smiths' eligibility for various loss mitigation options.   (Id.).

In a letter dated June 3, 2014, Ocwen stated that after evaluating the Loan "for all loss mitigation options available, including, but not limited to, the Home Affordable Modification Program ('HAMP')," Ocwen was unable to offer any relief to the Smiths.   (Id.).   The letter explained that the financial records the Smiths provided indicated that they had the ability to pay their mortgage using income, cash reserves, or other assets. (Id.).

Several weeks later, in a letter dated June 27, 2014, the Smiths appealed Ocwen's denial.   (Id. ¶ 63).   Ocwen responded by letter dated July 3, 2014, explaining that at the time of the initial review, the Smiths' loan was not yet in default and they

did not qualify for a proprietary loan modification program "because guidelines established by the investor of [the] loan, Deutsche Bank National Trust Company, state that [the] loan must be in default, or foreseeable default in order to be eligible for a loan modification under any program." (Id.). Ocwen further stated that due to the incongruity between the expenses considered during the Smiths' modification review and the expenses in the Smiths' HAMP Financial Form, Ocwen would use the "corrected expense calculation" to reevaluate the Loan and determine whether the Loan was eligible for Ocwen's alternative modification program. (Id. ¶ 66). Ocwen concluded by informing the Smiths that Ocwen would make a decision on eligibility within the next fourteen days. (Id.). But Ocwen never contacted the Smiths to communicate a decision. (Id.).

The parties then exchanged another series of correspondences in July, August, and September 2014. On July 29, Ocwen contacted the Smiths to notify them that they were fifty-eight days delinquent on their mortgage. (Id. ¶ 67). On August 13, the Smiths sent an email to Ocwen, explaining that they had just recently received the July 3 letter and once again appealed Ocwen's denial of a loan modification. (Id. ¶ 68). In their email, the Smiths "provided numerical proof that [Ocwen's] calculations establishing any basis for denial involved incorrect figures and flawed accounting." (Id.). The Smiths

3

also disputed that they were two months late on their mortgage. (Id.).

On August 14, Ocwen responded to the Smiths' August 13 email, stating that based on the Smiths' request, Ocwen would send the Smiths the "HAMP Escalated Case Dispute Resolution Letter" ("HAMP Letter"). (Id. ¶ 69). But Ocwen never sent the HAMP Letter. (Id.). Then, on September 10, 2014, Ocwen issued another letter, stating, "We are unable to offer you a proprietary modification because: You failed to make the initial trial payment within the required timeframe." (Id. ¶ 70). The Smiths were "baffled" because they did not think they had entered into a loan modification arrangement with Ocwen.[1] (Id.)

On September 27, the Smiths responded to the September 10 letter with a final request that Ocwen reconsider their application. (Id. ¶ 71). The Smiths urged Ocwen to "use correct and generally-accepted mathematical principles" and "to refer to [Consumer Financial Protection Bureau] guidelines and act accordingly thereto." (Id.).

Then, at some unspecified time, the Smiths sent Ocwen another loan modification application. (Id. ¶ 72). Ocwen responded on February 18, 2015 with a letter that was nearly

---

[1] Ocwen offers what it contends is a June 18, 2014 letter from Ocwen to the Smiths. (ECF No. 11-8). The letter outlines the terms of a loan modification Ocwen offered to the Smiths. (Id.). The Smiths, however, dispute the authenticity of this letter.

identical to Ocwen's May 28, 2014 letter in response to the Smiths' initial loan modification application. (Id.). Ocwen also sent an April 24, 2015 correspondence stating, "We sent you an earlier letter outlining assistance options . . . . Since that time a foreclosure action has been initiated on [your property]. But even though the foreclosure process has begun, you may still have foreclosure prevention alternatives available – BUT YOU SHOULD ACT QUICKLY!" (Id. ¶ 73). The Smiths allege that Ocwen's February 18, 2015 letter was "some kind of generic form letter that did not deal specifically with [the Smiths'] situation." (Id.).

### 2. Debt Collection and Validation Communications

On May 5, 2015, the law firm McCabe, Weisberg & Conway, LLC (the "Firm") wrote the Smiths to advise that Ocwen retained the Firm in connection with the Smiths' debt. (Id. ¶ 74).[2] The Firm's letter stated that the Firm was attempting to collect a debt and that the debt was $454,961.52 -- an amount the Smiths allege is "unverified and unsubstantiated." (Id.). Shortly thereafter, on May 8, 2015, the Firm sent the Smiths a "Notice of Intent to Foreclose," stating that the Smiths' loan went into default on June 2, 2014 and the total amount required to cure

---

[2] The Smiths appear to incorrectly allege the Firm's letter was dated May 5, 2014. (Compare Compl. ¶ 74 with ECF No. 11-13).

the default was $36,832.62.  (Id. ¶ 75).[3]

On June 4, 2015 the Smiths requested that the Firm validate and verify their debt and provide proof of ownership of the promissory note underlying the loan.  (Id. ¶ 77).  Ocwen responded on June 30, 2015 with a "Reinstatement Quote" reflecting that the total amount due to reinstate the loan was $39,483.08.  (Id. ¶ 76).  Less than three weeks later, on July 17, 2015, Ocwen notified the Smiths that the foreclosure proceedings were on hold. (Id. ¶ 78).  Then, on July 20, 2015, the Firm again contacted the Smiths, this time advising that it had verified the debt and providing a copy of the assignment of mortgage evidencing a transfer to Ocwen.  (Id. ¶¶ 79, 94).

On August 12, 2015, the Smiths responded to the Firm's July 20 letter with a correspondence captioned "NOTICE OF INSUFFICIENT VALIDATION/VERIFICATION OF DEBT," in which the Smiths asserted that neither the Firm nor Ocwen had properly validated or verified the debt.  (Id. ¶ 80).  The Smiths allege Ocwen did not properly verify the Smiths' debt because the "loan transaction history report" Ocwen prepared was "hastily and amateurishly assembled" and it "did not accurately or even chronologically reflect ledger values."  (Id.).  On September 1, 2015, Ocwen responded with a letter stating, "The Validation of

_____

[3] The Smiths appear to incorrectly allege the Notice of Intent to Foreclose was dated May 8, 2014.  (Compare Compl. ¶ 75 with ECF No. 11-14).

Debt remains unchanged and a copy of the closing documentation is enclosed." (Id. ¶ 81). The Smiths do not allege whether the Firm ever finalized a foreclosure.

## B.   **Procedural Background**

On January 11, 2016, the Smiths commenced this action in the Circuit Court for Harford County, Maryland. (Compl.). Ocwen removed the case to this Court on February 22, 2016. (ECF No. 1). The Smiths assert Ocwen violated the following regulations and statutes: (1) 12 C.F.R. § 1024.41, a federal regulation under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq. (Count I); (2) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. (Count II); (3) the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5481, 5564 (Count III);[4] and (4) the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-301 et seq. (West 2016) (Count IV). (Compl. ¶¶ 96-124). The Smiths seek injunctive relief, monetary damages, and attorneys' fees and costs.

---

[4] There is no private cause of action under CFPA. See 12 U.S.C. § 5564(a) ("If any person violates a federal consumer law, the [Consumer Financial Protection Bureau] may . . . commence a civil action against such a person."); see also Kalisz v. Am. Express Centurion Bank, No. 1:15-CV-01578, 2016 WL 1367169, at *2 (E.D.Va. Apr. 5, 2016) ("Any violation of the CFPA may not be litigated by Plaintiff because they cannot be enforced by a private individual."). Thus, Count III fails as a matter of law, and the Court will grant Ocwen's Motion as to this Count.

Ocwen moved to dismiss on March 25, 2016. (ECF No. 11). The Smiths responded in opposition on May 19, 2016 (ECF No. 18), and Ocwen replied on June 6, 2016 (ECF No. 19).

## II.  DISCUSSION

### A.  <u>Standards of Review</u>

#### 1.  Rule 12(b)(1)

Ocwen argues the Smiths do not have standing to pursue Count I because there is no independent cause of action for a purported violation of 12 C.F.R. § 1024.41. Motions to dismiss for lack of standing are governed by Federal Rule of Civil Procedure 12(b)(1), which pertains to subject matter jurisdiction. <u>See CGM, LLC v. BellSouth Telecommc'ns, Inc.</u>, 664 F.3d 46, 52 (4th Cir. 2011). A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" <u>Hasley v. Ward Mfg., LLC</u>, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009)).

Here, because Ocwen raises a facial challenge, the Court will afford the Smiths "the same procedural protection as [they] would receive under a Rule 12(b)(6) consideration." <u>Kerns</u>, 585

F.3d at 192 (quoting <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982)).  As such, the Court will take the facts in Smiths' Complaint as true and deny Ocwen's Rule 12(b)(1) Motion to Dismiss if the Complaint alleges sufficient facts to invoke subject matter jurisdiction for Count I.  <u>Id.</u>

## 2.  **Rule 12(b)(6)** [5]

Ocwen also moves to dismiss under Rule 12(b)(6), arguing the Smiths' Complaint fails to state a claim upon which relief may be granted.  "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting <u>Republican Party v.</u> <u>Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992)).  A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

---

[5] In their opposition brief, the Smiths request a discovery period of ninety days.  (Pls.' Opp'n Mot. Dismiss ["Opp'n"] at 2, ECF No. 18).  Because the Court will not convert Ocwen's motion into one for summary judgment, the Court will deny this request without prejudice.

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom. Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678, or

"allegations that are merely conclusory, unwarranted deductions of fact[,] or unreasonable inferences," <u>Veney v. Wyche</u>, 293 F.3d 726, 730 (4th Cir. 2002).

Generally, "a court may not consider extrinsic evidence at the 12(b)(6) stage." <u>Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC</u>, 794 F.Supp.2d 602, 611 (D.Md. 2011). If, however, "a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.'" <u>Id.</u> (quoting <u>Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.</u>, 367 F.3d 212, 234 (4th Cir. 2004)). When the "bare allegations of the complaint" conflict with exhibits or other properly considered documents, "the exhibits or documents prevail." <u>RaceRedi Motorsports, LLC v. Dart Mach., Ltd.</u>, 640 F.Supp.2d 660, 664 (D.Md. 2009).[6]

---

[6] In their opposition brief, the Smiths offer a blanket dispute of the authenticity of all of Ocwen's exhibits, highlighting that Ocwen does not support any of them with an affidavit. (Opp'n at 1). Paradoxically, however, the Smiths refer to and explicitly quote from many of the same exhibits that they contend are not authentic. And, what is more, they only specifically challenge the authenticity of one of Ocwen's exhibits: the promissory note (ECF No. 11-2). In <u>Rupli v. Ocwen Loan Servicing, LLC</u>, No. DKC 16-0181, 2016 WL 4141013, at *1 (D.Md. Aug. 4, 2016), a case with allegations markedly similar to this case and the same counsel, the plaintiff also generally disputed the authenticity of all documents Ocwen attached to its Rule 12(b)(6) motion to dismiss. This Court concluded it would consider all the documents for which plaintiff generally

### 3.   Rule 9(b)

Allegations of fraud, which the Smiths assert in Count IV, are subject to the heightened pleading standard of Rule 9(b). Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783–784 (4th Cir. 1999). Under Rule 9(b), "the circumstances constituting fraud" must be stated "with particularity." The "circumstances constituting fraud" include the "time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what was obtained thereby." Superior Bank, F.S.B. v. Tandem Nat. Mortgage, Inc., 197 F.Supp.2d 298, 313–14 (D.Md. 2000) (quoting Windsor Assocs. v. Greenfeld, 564 F.Supp. 273, 280 (D.Md. 1983)). Mental conditions, such as malice, intent, and knowledge, may be alleged generally. Fed.R.Civ.P. 9(b). Fraud allegations that fail to comply with Rule 9(b) warrant dismissal under Rule 12(b)(6). Harrison, 176 F.3d at 783 n.5.

---

disputed authenticity, as long as they were integral to the plaintiff's claims. Id. at *1 n.2. Here, the Court will also consider all of Ocwen's exhibits for which the Smiths generally dispute authenticity, but only if they are (1) integral to the Complaint, (2) explicitly relied on in the Complaint, and (3) directly quoted in the Complaint.

B.    **Analysis**

    1.    **RESPA Regulation: 12 C.F.R. § 1024.41 (Count I)**

        a.    **Lack of Standing**

Ocwen first argues the Smiths lack standing to pursue Count I because they do not have a legal right to enforce HAMP and its guidelines.  Ocwen asserts that HAMP is a federal program, not federal law.  Ocwen overlooks, however, that 12 C.F.R. § 1024.41 provides that a borrower may enforce that regulation under section 6(f) of RESPA, 12 U.S.C. § 2605(f).  As best the Court can discern from the Complaint,[7] the Smiths are not seeking to enforce HAMP guidelines; rather, the Smiths ground Count I in RESPA regulations.  Because these regulations provide a private right of action, the Court concludes the Smiths have standing to pursue Count I.  Thus, the Court will deny Ocwen's Motion to the extent they move under Rule 12(b)(1).

        b.    **Failure to State a Claim**

The Court will grant Ocwen's Rule 12(b)(6) Motion as to Count I for two reasons.  First, by failing to respond to Ocwen's arguments in favor of dismissing Count I or argue why the allegations in their Complaint state a claim, the Smiths have abandoned Count I.  Second, even assuming the Smiths have

---

[7] The Court echoes Judge Chasanow's observation in _Rupli_ that the Smiths' Complaint, which is strikingly similar to the complaint in _Rupli_, is "not a model of clarity."  2016 WL 4141013, at *6.

not abandoned Count I, they fail to plausibly allege Ocwen violated 12 C.F.R. § 1024.41.

The Smiths allege Ocwen violated 12 C.F.R. § 1024.41 for three reasons: (1) within five days after receiving the Smiths' application for loan modification, Ocwen did not acknowledge its receipt or state whether the application was complete; (2) Ocwen did not evaluate the Smiths' application for all available loss-mitigation options and provide notice of such options within thirty days of receiving their application; and (3) Ocwen did not provide the Smiths with specific reasons for denial of their application.  Curiously, the Smiths do not address any of these allegations in their opposition brief.  In fact, the section of the Smiths' opposition brief addressing alleged violations of 12 C.F.R. § 1024.41 appears entirely disconnected from their Complaint.[8]  The Smiths neither respond to Ocwen's arguments in favor of dismissing Count I nor advance their own arguments for why the allegations in their Complaint succeed in stating a claim.  Accordingly, the Smiths have abandoned Count I, which

---

[8]  The Smiths argue Ocwen violated 12 C.F.R. § 1024.41 by failing to notify the Smiths they had a right to appeal the initial denial of a modification plan and failing to afford the Smiths fourteen days from the date of Ocwen's loan modification offer to accept or reject the offer.  (Opp'n at 4-5).  The Court will not consider these arguments because the Smiths are bound by the allegations in their Complaint and cannot amend their Complaint through their opposition brief.  See Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) aff'd, 141 F.3d 1162 (4th Cir. 1998).

provides a basis for dismissing it. See Ferdinand-Davenport v. Children's Guild, 742 F.Supp.2d 772, 777 (D.Md. 2010) (dismissing discriminatory discharge claim because plaintiff failed to respond to defendant's argument that claim should be dismissed).

Moreover, even assuming the Smiths have not abandoned Count I, the Smiths fail to state a claim upon which relief may be granted. Under 12 C.F.R. § 1024.41(b)(2)(i), if a servicer receives a loss mitigation application forty-five days or more before a foreclosure sale, the servicer must, within five days of receiving the application, notify the borrower in writing and state whether the application is complete. The Smiths allege Ocwen failed to acknowledge receipt of the Smiths' application within five days, but the Smiths do not allege when they submitted their application. The Smiths merely state that on May 28, 2014, Ocwen responded to the Smiths' "recently-submitted loan modification agreement." (Compl. ¶ 62). Without a date of submission, the Court cannot reasonably infer that Ocwen violated the five-day deadline.

The Smiths' remaining allegations fail to state a claim because they utterly belie exhibits from which the Smiths quote in their Complaint. Ocwen presents a May 23, 2014 letter addressed to the Smiths in which Ocwen acknowledged receipt of the Smiths' application and stated their "application [was]

15

complete." (ECF No. 11-4 at 4). In a letter dated June 3, 2014
-- just six days after the Smiths allege Ocwen acknowledged
receiving the Smiths' application -- Ocwen indicated that after
evaluating the Smiths "for all loss mitigation options
available, including, but not limited to, the Home Affordable
Modification Program ('HAMP')," Ocwen was unable to offer any
loan modifications. (Compl. ¶ 63). The letter further
explained that the reason for the denial was that Ocwen's
calculations showed that the Smiths were still able to pay the
current mortgage using "income, cash reserves or other assets."
(Id.). The May 23 and June 3, 2014 letters trump the Smiths'
directly contradictory allegations that Ocwen (1) did not inform
the Smiths whether there application was complete, (2) did not
evaluate the Smiths' application for all available loss-
mitigation options and provide notice of such options within
thirty days of receiving the application, and (3) did not
provide the Smiths with specific reasons for denial of their
application. See RaceRedi Motorsports, 640 F.Supp.2d at 664.

Accordingly, because the Smiths abandon their 12 C.F.R. §
1024.41 claim and their allegations fail to state a claim that
Ocwen violated this regulation, the Court will grant Ocwen's
Motion as to Count I.

## 2.   **FDCPA (Count II)**

The Court will grant Ocwen's Motion as to Count II because the Smiths do not plausibly allege Ocwen is a debt collector under the FDCPA.

The Smiths contend Ocwen violated the FDCPA because Ocwen failed to validate the Smiths' debt and misidentified the owner of the Loan.  (Compl. ¶ 106).  The FDCPA protects consumers from abusive and deceptive debt collection practices. See United States v. Nat'l Fin. Servs. Inc., 98 F.3d 131, 135 (4th Cir. 1996).  To prevail on their FDCPA claim, the Smiths must plausibly allege that: "(1) [they] ha[ve] been the object of collection activity arising from consumer debt, (2) [Ocwen] is a debt collector as defined by the FDCPA, and (3) [Ocwen] has engaged in an act or omission prohibited by the FDCPA." Stewart v. Bierman, 859 F.Supp.2d 754, 759 (D.Md. 2012) (quoting Dikun v. Streich, 369 F.Supp.2d 781, 784-85 (E.D.Va. 2005)), aff'd sub nom. Lembach v. Bierman, 528 Fed.Appx. 297 (4th Cir. 2013).

A "debt collector" is "any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  More importantly for this case, the term "debt collector" does not include "any person

17

collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F) (emphasis added). Additionally, when there is evidence a loan servicer discussed loan modification with a borrower, the loan servicer is not a debt collector. See Rupli v. Ocwen Loan Servicing, LLC, No. DKC 16-0181, 2016 WL 4141013, at *7 (D.Md. Aug. 4, 2016); Combs v. Bank of Am., N.A., No. GJH-14-3372, 2015 WL 5008754, at *5 (D.Md. Aug. 20, 2015).[9]

Here, the allegations in the Smiths' Complaint coupled with exhibits that are integral to, explicitly relied on, and directly quoted in the Smiths' Complaint show that Ocwen was servicing the Loan before the Smiths defaulted. The Smiths

---

[9] Recently, in McCray v. Fed. Home Loan Mortg. Corp., No. 15-1444, 2016 WL 5864509 (4th Cir. Oct. 7, 2016), the United States Court of Appeals for the Fourth Circuit further clarified what activities constitute debt collection under the FDCPA. The Fourth Circuit confirmed that to be a debt collector, an individual or entity needs only to have acted "'in connection with the collection of any debt' or in an 'attempt to collect any debt.'" Id. at *4 (quoting Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119, 124 (4th Cir. 2014)). The Court does not read McCray as overruling Rupli and Combs because the facts in McCray are utterly different from the facts in those cases. McCray dealt with substitute trustees pursuing foreclosure against a borrower. Rupli and Combs -- like this case -- dealt with a mortgage servicer that discussed loss mitigation options with a borrower. And, even if the Fourth Circuit intended McCray to overrule Rupli and Combs, McCray does nothing to alter 15 U.S.C. § 1692a(6)(F), which provides that an entity is not a debt collector when it obtains a loan before the loan is in default.

allege that Ocwen was servicing the Loan at least as early as April 24, 2014, when Ocwen received a mortgage payment from the Smiths.  (Compl. ¶ 62).  The Smiths do not assert when they defaulted on their mortgage.  But, in Ocwen's July 3, 2014 letter to the Smiths, Ocwen advised that the Smiths were <u>not</u> in default on their mortgage as of May 29, 2014.  (ECF No. 11-7).  And, the Firm's May 8, 2015 Notice of Intent to Foreclose stated the Loan "went into default June 2, 2014." (Compl. ¶ 75); (ECF No. 11-14 at 6).  This means Ocwen was servicing the Loan over a month <u>before</u> Ocwen defaulted.  Moreover, the Smiths allege that Ocwen and the Smiths discussed loan modification on numerous occasions over the course of several months.  (<u>See, e.g.</u>, Compl. ¶¶ 62, 63, 66, 69, 70, 72).

Thus, the Court concludes the Smiths do not plausibly allege Ocwen is a debt collector under the FDCPA.  The Court, therefore, will grant Ocwen's Motion as to Count II.

### 3.   <u>MCPA (Count IV)</u>

The Court will grant Ocwen's Motion as to Count IV because the Smiths abandon their MCPA claim and their MCPA allegations directly contradict a June 3, 2014 letter in which Ocwen agreed to provide the Smiths a short-sale.

The Smiths allege Ocwen represented that it offers borrowers a variety of loss mitigation plans, such as loan modifications, forbearance agreements, and short-sale

19

agreements.   (Compl. ¶ 119).   According to the Smiths, Ocwen violated the MCPA when it offered these loss mitigation plans without the intent to actually provide them.   (Id. ¶ 120).

Under the MCPA, "a person may not engage in any unfair or deceptive trade practice" related to the extension of consumer credit or the collection of consumer debts.   Md. Code Ann., Com. Law ("CL") § 13-303 (West 2016).   The specific provision of the MCPA most pertinent to the Smiths' MCPA claim prohibits advertisement of consumer services without intent to sell or otherwise provide them.   See CL § 13-301(5).   To sufficiently state an MCPA claim, "a plaintiff must adequately plead that (1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the representation, and (3) doing so caused the plaintiff actual injury."   Turner v. J.P. Morgan Chase, N.A., TDC-14-0576, 2015 WL 5021390, at *4 (D.Md. Aug. 21, 2015) (citing Currie v. Wells Fargo Bank, N.A., 950 F.Supp.2d 788, 796 (D.Md. 2013)).   Claims for unfair or deceptive trade practices under the MCPA sound in fraud and must be pleaded with particularity.   Haley v. Corcoran, 659 F.Supp.2d 714, 724 n.10 (D.Md. 2009).

Ocwen argues the Smiths do not sufficiently allege the reliance or damages elements of an MCPA claim.   In their opposition brief, the Smiths do not respond to Ocwen's arguments.   In fact, they totally abandon the MCPA claim they

attempt to allege in their Complaint by arguing Ocwen violated the MCPA for five entirely different reasons.[10]  What is more, in the June 3, 2014 letter from Ocwen to the Smiths -- an exhibit from which the Smiths directly quote in their Complaint -- Ocwen agreed to provide the Smiths an option to short-sell their home. (See ECF No. 11-5).  Accordingly, because the Smiths abandon their MCPA claim and their MCPA allegations directly contradict Ocwen's June 3, 2014 letter, the Court will grant Ocwen's Motion as to Count IV.

### III.  CONCLUSION

For the foregoing reasons, the Court will GRANT Ocwen's Motion to Dismiss (ECF No. 11).  A separate order follows.

Entered this 16th day of November, 2016

/s/

_____
George L. Russell, III
United States District Judge

---

[10]  In their opposition brief, the Smiths contend Ocwen violated the MCPA when it: (1) sent the Smiths an "assignment that proves the subject loan cannot be in the claimed trust;" (2) failed to disclose that the Smiths had a right to appeal the HAMP Trial Period Plan ("TPP") that Ocwen offered; (3) failed to review the Smith appeal of the TPP offer; (4) failed to afford the Smiths fourteen days to accept or reject the TPP offer; and (5) provided the Smiths a transaction history for the Loan that showed a beginning balance of over $446,000 when the loan principal was $329,600.  (Opp'n at 18).  The Court highlights that the Smiths acknowledgment that Ocwen provided them a HAMP TPP flies in the face of their own allegation that Ocwen offered loss mitigation programs without intent to actually provide them.